UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

ROBERT PIETRI,

Plaintiff,

v.

N.Y.S. OFFICE OF COURT ADMINISTRATION,
JAMES IMPERATRICE, ANN
PFAU and HERBERT ADLERBERG,

Defendants.

-------------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAR 2 8 2013 ★

BROOKLYN OFFICE

**MEMORANDUM & ORDER**
11-CV-3205 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Robert Pietri proceeding *pro se* brings the above-captioned against Defendants
New York State Office of Court Administration ("OCA"), James Imperatrice, the Chief Court
Clerk of the Kings County Supreme Court, Ann Pfau, the former Chief Administrative Judge of
the New York State Unified Court System, and Herbert Adlerberg, a Judicial Hearing Officer of
the New York State Unified Court System, asserting claims of failure to accommodate, denial of
constitutional rights, racial discrimination, retaliation, and hostile work environment pursuant to
Title I of the American with Disabilities Act ("ADA"), 42 U.S.C. § 1983 and Title VII of the
Civil Rights Act of 1964 ("Title VII"). Plaintiff seeks compensatory and punitive damages for
lost pay and benefits, as well as injunctive relief in the form of restoration to the rank of sergeant.

Defendants moved to dismiss for lack of subject matter jurisdiction pursuant to Rule
12(b)(1) of the Federal Rules of Civil Procedure and failure to state a claim upon which relief
may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the
reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part. The

Court grants Defendants' motion to dismiss Plaintiff's ADA claims against all Defendants, § 1983 claims against Defendants OCA and Defendant Adlerberg, § 1983 claims against Defendants Imperatrice and Pfau in their official capacities, and Title VII claims against the Individual Defendants.[1] Defendants' motion to dismiss is denied as to Plaintiff's § 1983 claims against Defendants Imperatrice and Pfau in their individual capacities and Title VII claims against OCA. Plaintiff is granted thirty (30) days from the date of this Memorandum and Order to file an amended complaint.

## I. Background.

Plaintiff began working as a court officer with OCA on October 17, 1978.[2] (Narrative Appendix to Complaint ("Compl. App.") 1.) Plaintiff was promoted to the rank of sergeant in 1991. (*Id.*) In 2004 and 2005, Plaintiff filed two separate complaints with the Equal Opportunity Employment Commission ("EEOC") claiming that OCA had a practice of discriminating against Hispanic officers. (Pl. Opp'n Mem. 3–4, 7.) After filing each complaint with the EEOC, Plaintiff filed a corresponding federal action. (*Id.*) Both federal actions were voluntarily withdrawn by Plaintiff and dismissed without prejudice. *See Pietri v. Imperatrice et al*, No. 04 Civ. 3415; *Pietri v. N.Y. Office of Court Admin.*, No. 05 Civ. 3302. As a result of litigating these actions, Plaintiff suffered from anxiety, depression, sleep problems and

---

[1] The term "Individual Defendants" refers to Defendants Imperatrice, Pfau, and Adlerberg.

[2] The facts alleged in the Complaint are assumed to be true for the purposes of this motion. Since Plaintiff is *pro se*, the Court will also consider facts contained in Plaintiff's opposition papers. *Small v. Ortlieb*, No. 10 Civ. 1616, 2012 WL 3229298, at *1 (E.D.N.Y. Aug. 6, 2012) ("[A]s part of this Court's duty to construe *pro se* pleadings liberally, the Court will take account of all the facts contained in both [plaintiff's] amended complaint and his opposition papers."); *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009) ("[T]he mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint.").

contemplated suicide. (Pl. Opp'n Mem. 4.) He received medical treatment and was prescribed several medications to treat these conditions. (*Id.*)

On January 7, 2008, Plaintiff notified the Kings County District Attorney's ("DA's") office that a Caucasian officer under Plaintiff's supervision, Jeffery Brennan, was operating a gambling operation from within the Kings County Supreme Court Courthouse ("Kings County Courthouse"). (Pl. Opp'n Mem. 2.) Three days later, Plaintiff filed another report about the same allegations with the DA's office, after receiving a death threat from Brennan. (*Id.*) On February 21, 2008, Plaintiff claims that Brennan threatened him and pushed him into a desk, resulting in a torn ligament in Plaintiff's foot. (*Id.* at 4.) As a result of this injury, Plaintiff was forced to take chargeable sick time, despite the fact that the injury took place while Plaintiff was on duty. (*Id.*) When Plaintiff used all of his available sick time, he was placed on unpaid medical leave beginning May 22, 2008 and ending August 27, 2009.[3] (Compl. App. 1–2; Defs. Mem. 2.)

After an OCA investigation determined that Plaintiff had likely fabricated his claims regarding the gambling operation and the assault by Brennan, OCA filed administrative charges against Plaintiff on May 22, 2008, seeking his termination. (Compl. App. 2; Compl. Ex. 1 ("Specification of Charges") at 1–3.)

An administrative hearing was held on January 27, 2009 and February 24, 2009 before Defendant Adlerberg. (Siudzinski Decl. Ex. D ("Report and Recommendation") 1.) During the course of the hearings, Plaintiff claims that Adlerberg "hurried and harassed" Plaintiff's attorney and excluded evidence that was favorable to Plaintiff. (Pl. Opp'n Mem. 6.) Plaintiff also claims

---

[3] Plaintiff's papers cite conflicting dates for these events. (*See* Compl. App. 1 (stating that Plaintiff's foot injury occurred in February 2009 and that he was on medical leave from May 2009 to August 2010); Pl. Opp'n Mem. 4 (stating that injury occurred in February 2008 and the medical leave occurred from May 2008 to May 2009).)

that he was denied access to exculpatory material during the discovery process, including notes from investigatory interviews with Plaintiff, and that false evidence was manufactured against him. (*Id.*) On March 29, 2009, Adlerberg issued a report and recommendation finding that Plaintiff filed false reports and lied about being assaulted by Brennan in order to obtain worker's compensation benefits.[4] (Compl. Ex. 2 ("Stipulation of Settlement").) On May 11, 2009, Plaintiff and the OCA signed a stipulation of settlement ("Stipulation of Settlement") resolving these charges. (*Id.*) Under the terms of the Stipulation of Settlement, Plaintiff admitted the charges against him and waived any right to appeal. (*Id.*) Plaintiff's continued employment was subject to a three-year probation, he was prohibited from carrying firearms on or off-duty, and he agreed to retire by March 27, 2012. (*Id.*) The Stipulation of Settlement also required that Plaintiff be transferred from the Kings County Courthouse to the Bronx County Supreme Court Courthouse ("Bronx County Courthouse") and that he be demoted in rank from sergeant to officer. (*Id.*) Although Plaintiff agreed to these terms, Plaintiff claims he did so under duress. (Compl. App. 1.) Plaintiff feared that if he did not sign the Stipulation of Settlement, he would be terminated and lose his benefits. (Pl. Opp'n Mem. 2.)

When Plaintiff returned from medical leave on August 27, 2009, he was assigned to conduct security screenings at the Bronx County Courthouse entrance. (Compl. App. 2.) However, unlike other officers performing the same task, Plaintiff was not permitted to carry a firearm or wear a bulletproof vest, thus placing him in danger. (*Id.*) This assignment also required Plaintiff to stand without a break for up to four hours at a time. (*Id.*) Plaintiff notified his supervisors of his disability related to his foot injury, but they refused to accommodate

---

[4] Defendants note that Adlerberg's findings of fact should be preclusive in this matter but do not specify how. (Defs. Mem. 3 n.2.) The parties have not briefed this issue to the Court, and it is therefore not before the Court. (*Id.*)

Plaintiff's injury. (*Id.*) Plaintiff filed an EEOC complaint on March 19, 2010, asserting the same underlying charges that Plaintiff has filed in the Complaint before this Court. (Siudzinski Decl. Ex. B ("Charge of Discrimination").) Plaintiff voluntarily resigned from his position with OCA on August 27, 2010, pursuant to New York State's Early Retirement Incentive Program. (Pl. Opp'n Mem. 7; Siudzinski Decl. ¶ 3.)

Plaintiff claims that he was treated less favorably than similarly situated non-Hispanic officers. (Compl. App. 3.) Plaintiff lists twelve non-Hispanic officers, several of whom had once been arrested but still received promotions and retained their firearm privileges.[5] (*Id*; Pl.

---

[5] Plaintiff describes twelve non-Hispanic officers as follows: (1) Sergeant Bryant Doughterty, a white male assigned to the Kings County Courthouse in Brooklyn, New York, was arrested for menacing a citizen with a firearm. (Compl. App. 3.) Sergeant Doughterty remains on full-duty with his firearm and was not demoted or subjected to the same level of punishment as Plaintiff. (*Id.*) (2) Officer Wayne Powell, an African-American male also assigned to Kings County courthouse in Brooklyn, New York, was arrested for criminal misconduct and other violations of the law and has a lengthy disciplinary history. (*Id.*) However, he remains in a full-duty status with his firearm. (*Id.*) (3) Lieutenant Bruce Christenson, a white male currently assigned to New York County Supreme Court Courthouse ("New York County Courthouse") in New York, New York, was arrested for purchasing illegal narcotics while on duty. (*Id.*) He remains in a full-duty status with his firearms privileges intact and, following his arrest, was promoted to the ranks of sergeant and lieutenant. (*Id.*) (4) Retired Officer Steven Rose, a white male, was arrested on criminal charges of menacing a citizen with his firearm. (*Id.*) Following his arrest, he was allowed to remain in full duty status and was given opportunities to work for overtime pay. (*Id.*) (5) Defendant Pasquale Natolie, a white male, exhibited abnormal behavior, and was a known drug addict. (*Id.*) He was allowed to remain as a court officer for a number of years before he was fired, rehired and fired again. (*Id.*) (6) Officer Paul Ferrante, a white male, was arrested for charges of sexual abuse of a prisoner in his custody and while on duty. (*Id.*) (7) Officer Michael MacHenry, a white mail, was arrested for menacing a New York City police officer with his firearm. (*Id.*) He was also arrested for numerous alcohol and drug possession charges. (8) Officer Neil Marino, a white male, was arrested for insurance fraud. (*Id.*) (9) Retired Officer Vincient Digilio, a white male, was allowed to work a security post while under the influence of alcohol. (*Id.*) (10) Officer William Moser, a white male assigned to the New York County Courthouse, was arrested for purchasing heroin. (*Id.*) (11) Officer Jay Gottfried, a white male, was permitted to use a chair while assigned to his security post. (*Id.*) (12) Sergeant Jill Cannon, a white female, was permitted to work light duty while pregnant. (*Id.*) Plaintiff did not specify what happened to Ferrante, MacHenry, Marino or Moser after they were arrested. However, he indicates that they were permitted to keep their jobs despite having been arrested. (*Id*; Pl. Opp'n Mem. 12.)

Opp'n Mem. 12.) Ten of the listed officers were permitted to keep their jobs as court officers, despite being arrested or having committed misconduct. (Compl. App. 3.) Three of those who were arrested were permitted to retain their firearm privileges. (*Id.*) Two additional non-Hispanic court officers received special accommodations in their duties in light of their physical conditions. (*Id.*)

On March 19, 2010, Plaintiff presented a Charge of Discrimination to the New York Division of Human Rights and the EEOC, alleging that he was subjected to adverse employment actions that violated Title VII and the ADA. (Siudzinski Decl. Ex. B.) The EEOC issued Plaintiff a "Right to Sue" letter on April 22, 2011. Plaintiff commenced this action on July 5, 2011.

## II. Discussion

### a. Legal Standard

#### i. Rule 12(b)(1)

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Shabaj v. Holder*, 704 F.3d 234, 237 (2d Cir. 2013) (alteration in original) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "'[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (alterations in original) (citations omitted), *aff'd*, 130 S. Ct. 2869 (2010). Plaintiff must prove that subject matter exists "by a preponderance of the evidence." *Morrison*, 547 F.3d at 170 (quoting *Makarova v. United States*, 201 F.3d 110, 113

6

(2d Cir. 2000)). A court may consider matters outside of the pleadings when determining whether subject matter jurisdiction exists. *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010); *Morrison*, 547 F.3d at 170.

### ii. Rule 12(b)(6)

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 320 (2d Cir. 2009)). A complaint must, however, "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson*, 631 F.3d at 63 (quoting *Iqbal*, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Where a plaintiff is proceeding *pro se*, the court must read his or her pleadings "liberally and interpret them to raise the strongest arguments they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citations omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see Ashmore v. Prus*, No. 12 Civ. 2760, 2013 WL 362998, at *2 (2d Cir. Jan. 31, 2013) (summary order) ("District courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend.").

### b. Plaintiff's ADA Claims are Barred by Sovereign Immunity

Defendants moved to dismiss Plaintiff's ADA claim on the grounds of sovereign immunity.[6] (Defs. Mem. 12–14.) States may not be sued in federal court unless they have waived their sovereign immunity or Congress has acted to abrogate state sovereign immunity pursuant to Section 5 of the Fourteenth Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Woods*, 466 F.3d at 236 (internal quotation marks omitted) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). The Second Circuit has recognized the New York State Unified Court System,[7] of which OCA is the administrative arm, as a state instrumentality protected by Eleventh Amendment sovereign immunity. *Gollomp v. Spitzer*, 568 F.3d 355, 367–68 (2d Cir. 2009) ("[T]he prior decisions of courts in this Circuit indicate that, as often as the question has been revisited, the answer has been the same: the New York State Unified Court System is immune from suit."); *see also Andre v. Marano*, No. 10 Civ. 00953, 2010 WL 1048842, at *3 (E.D.N.Y. Mar. 18, 2010) ("The New York State Unified Court System is an arm

---

[6] Plaintiff claims that he suffered injuries to both knees and his right foot, and that OCA refused to accommodate his disability or reassign him because of his disability. (Compl. App. 1–2.)

[7] The New York State Unified Court System is the judicial branch of New York State Government. *Canales-Jacobs v. N.Y. Office of Court Admin.*, 640 F.Supp.2d 482, 488 (S.D.N.Y. 2009) (citing N.Y. Const. art. IV). The New York State Office of Court Administration is the administrative arm of the New York State Unified Court System. *Canales-Jacobs*, 640 F. Supp. 2d at 488 (citing N.Y. Judiciary Law § 212(1)(b)).

of the State and is therefore protected by Eleventh Amendment sovereign immunity.").[8] The

Eleventh Amendment also bars suits against state officials in their official capacities for money

damages. *Fulton v. Goord,* 591 F.3d 37, 45 (2d Cir. 2009) (stating that the Eleventh Amendment

generally bars plaintiff's claims for money damages against state officials sued in their official

capacities (citing *Kentucky v. Graham,* 473 U.S. 159, 169 (1985))); *Ford v. Reynolds,* 316 F.3d

351, 354–55 (2d Cir. 2003) ("The Eleventh Amendment bars the award of money damages

against state officials in their official capacities.").

The Supreme Court has unequivocally held that Title I of the ADA does not abrogate

Eleventh Amendment immunity, *Bd. of Trustees v. Garrett,* 531 U.S. 356, 374 (2001), and New

York State has not waived immunity for ADA claims, *Nicolae v. Office of Vocational & Educ.

Servs. for Individuals with Disabilities,* 257 F. App'x 455, 457 (2d Cir. 2007). *See also Kilcullen

v. N.Y. Dep't of Transp.,* 55 F. App'x 583, 584 (2d Cir. 2003) ("[T]he Supreme Court held in

*Board of Trustees of the Univ. of Alabama v. Garrett,* that Title I of the ADA did not abrogate

Eleventh Amendment immunity."); *Canales-Jacobs v. N.Y. Office of Court Admin.,* 640 F. Supp.

---

[8] Plaintiff argues that OCA is not entitled to Eleventh Amendment Immunity because it receives federal funds. (Pl. Opp'n Mem. 21.) According to Plaintiff, OCA's receipt of federal funds nullifies its sovereign immunity in "discrimination actions," because "Congress makes it clear to states that their receipt of federal funds constitutes a waiver of their Eleventh Amendment immunity." (*Id.*) Plaintiff is mistaken. *See, e.g., Allen v. Mattingly,* No. 10 Civ. 667, 2011 WL 1261103, at *6 (E.D.N.Y. Mar. 29, 2011) ("Plaintiff's contentions . . . that the State defendants 'cannot claim any immunity' because 'the State Family Court accepts Federal funding' are without support in law and are meritless."). First, the Supreme Court held that Congress could not "base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article I" and that the ADA could only apply to the States to the extent that the statue was enacted pursuant to a valid exercise of its power under Section 5 of the Fourteenth Amendment. *Bd. of Trs. of the Univ. of Al. v. Garrett,* 531 U.S. 356, 364 (2001). Second, although Congress originally included a provision allowing private suits against states for money damages in the ADA, the Supreme Court invalidated the provision on the grounds that Congress did not act pursuant to a valid grant of constitutional authority in enacting the provision. *Id.* at 371–74; *see also Kilcullen v. N.Y. Dep't of Transp.,* 55 F. App'x 583, 584 (2d Cir. 2003) ("[T]he Supreme Court held in *Board of Trustees of the Univ. of Alabama v. Garrett,* that Title I of the ADA did not abrogate Eleventh Amendment immunity.").

2d 482, 498 (S.D.N.Y. 2009) ("Title I [of the ADA] does not abrogate the sovereign immunity enjoyed by the State of New York or its agencies and officials."). Plaintiff's ADA claims for monetary and injunctive relief against OCA must therefore be dismissed for lack of subject matter jurisdiction. *See Canales-Jacobs*, 640 F. Supp. 2d at 498 ("[P]laintiff's ADA claims seeking retroactive and prospective relief against the Office of Court Administration must be and are dismissed for lack of subject matter jurisdiction."); *see also Darcy v. Lippman*, 356 F. App'x 434, 436 (2d Cir. 2009) (holding that plaintiff's ADA claim against the New York Unified Court System was barred by the Eleventh Amendment); *Trivedi v. N.Y. Unified Court Sys. Office of Court Admin.*, 818 F. Supp. 2d 712, 727 (S.D.N.Y. 2011) (holding that plaintiff's ADA claim was barred by sovereign immunity because "[t]he OCA is a government entity that, pursuant to sovereign immunity, is not amenable to suit").

The Individual Defendants are employees of New York State and OCA, (Defs. Mem. 13), and are therefore entitled to Eleventh Amendment immunity for damages claims brought against them in their official capacity.[9] *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Darcy*, 356 F. App'x at 437 ("The Eleventh Amendment likewise bars [plaintiff] from pursuing [an ADA] claim for damages against the individual defendants in their official capacities." (citing *Edelman*,

---

[9] The ADA does not provide for suits against individuals in their individual or personal capacity, and therefore, to the extent that Plaintiff asserts claims under the ADA against the Individual Defendants, it must be in their official capacities. *Darcy v. Lippman*, 356 F. App'x 434, 437 (2d Cir. 2009) (holding plaintiff could not sue individual "defendants in their personal capacities" because the ADA does "not provide for actions against individual supervisors"); *Cohn v. KeySpan Corp*, 713 F. Supp. 2d 143, 154 (S.D.N.Y. 2010) ("Individuals may not be sued in their individual or personal capacity under the ADA or Rehabilitation Act."); *see also Gill v. Calescibetta*, 157 F. App'x 395, 396 (2d Cir. 2005) ("[T]he ADA does not protect individuals from the actions of state officials undertaken in their individual capacities."); *Smith v. Barry*, No. 12 Civ. 2063, 2012 WL 3308397, at * 3 (E.D.N.Y. Aug. 10, 2012) ("Plaintiff cannot assert a plausible ADA claim against these individuals in their personal capacities because the ADA does not provide for actions against individuals, even if they are acting in a supervisory capacity." (citing *Darcy*, 356 F. App'x at 434)).

10

4115 U.S. at 663))). Although the Eleventh Amendment does not bar Title I ADA claims for prospective injunctive relief against a state official in his official capacity, Plaintiff must plead an ongoing violation. *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) ("A plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state offers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002))). Here, Plaintiff claims to request injunctive relief; however, he only seeks compensation for past wrongs in the form of back pay, retrospective seniority, and lost sick leave. (Compl. App. 3–4.) *See State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 98 (2d Cir. 2007) (holding plaintiff's ADA injunctive claims permitted where plaintiff's claims did "not seek compensation for past wrongs" or "require the state to pay lost wages, backpay, or retrospective benefits"). To the extent that Plaintiff requests prospective relief in the form of a promotion, (Compl. Appl. 3–4), such claims are moot because Plaintiff has retired and does not appear to request active reinstatement.[10] *Darcy*, 356 F. App'x at 436 n.1 (finding all of plaintiff's ADA claims for injunctive relief moot because plaintiff "has retired" (citing *Dean v. Blumenthal*, 577 F.3d 60, 65–66 (2d Cir. 2009))).

---

[10] Plaintiff claims that as a result of the hearing before Adlerberg, he was "[f]orced to take mandatory retirement from [OCA] beginning March 27, 2012." (Pl. Opp'n Mem. 16.) As part of the Stipulation of Settlement, Plaintiff agreed to retire no later than March 27, 2012. (Compl. App. 1; Stipulation of Settlement 3.) Plaintiff states that he signed the Stipulation of Settlement under duress. (*Id.*) However, Plaintiff also states that in March 2010, he "became aware" of a "possible early retirement incentive," and that he, in fact, retired on August 27, 2010. (Pl. Opp'n Mem. 7.) Plaintiff now resides in North Carolina. (Compl. 2; *see also* Siudzinski Decl. ¶ 3 ("Plaintiff voluntarily resigned from service pursuant to the State's Early Retirement Incentive Program effective August 27, 2010, and now resides in North Carolina.").) Since Plaintiff voluntarily retired in 2010, before the retirement date he agreed to as part of the Stipulation of Settlement, and does not appear to request active reinstatement, Plaintiff only requests relief for past harm.

11

The Court grants Defendants' motion to dismiss Plaintiff's ADA claims against OCA and the Individual Defendants for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### c. Plaintiff's Section 1983 Claims

Plaintiff claims that Defendants violated his rights as guaranteed by the First, Fifth, and Sixth Amendments to the United States Constitution. (Pl. Opp'n Mem. 14, 23.) Plaintiff argues that Defendants violated his First Amendment rights by orchestrating the administrative proceeding against him in retaliation for his past complaints about discrimination in the office and his two lawsuits. (Pl. Opp'n Mem. 23.) Plaintiff also argues that Defendants violated his Fifth and Sixth Amendment rights during the proceedings initiated against him by, for example, failing to inform him that he was under investigation, closing the courtroom during his hearing and denying him the opportunity to confront witnesses against him. (Pl. Opp'n Mem. 14.) Defendants move to dismiss Plaintiff's § 1983 claims on the grounds of sovereign immunity, absolute immunity, qualified immunity, and failure to state a claim. (Defs. Mem. 14–19.) As discussed below, Plaintiff's § 1983 claims against OCA and the Individual Defendants in their official capacity are barred by sovereign immunity and his § 1983 claim against Adlerberg is barred by absolute immunity. Plaintiff currently fails to state a § 1983 claim against Imperatrice and Pfau but will be permitted to amend his § 1983 claims against them in their individual capacities.

### i. Plaintiff's § 1983 Claims Against OCA and the Individual Defendants are Barred by Sovereign Immunity

The state has not waived its Eleventh Amendment immunity to claims brought under § 1983, and, therefore, Plaintiff cannot sustain his § 1983 claims against OCA and the Individual Defendants in their official capacity. *See Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) ("It is well-established that New York has not consented to § 1983 suits in federal

court, and that § 1983 was not intended to override a state's sovereign immunity." (internal

citations omitted)); *see also Anderson v. State of New York, et. al.*, 614 F. Supp. 2d 404, 426

(S.D.N.Y. 2009) (holding that the "[plaintiff's] section 1983 claim must be dismissed against the

governmental entity defendants (N.Y.S. and OCA) and the individual defendants in their official

capacities on the basis of sovereign immunity under the Eleventh Amendment"), *aff'd sub nom.*,

*Anderson v. Cahill*, 417 F. App'x 92 (2d Cir. 2011). The Court grants Defendants' motion to

dismiss Plaintiff's § 1983 claims against the OCA and the Individual Defendants in their official

capacities.

### ii. Plaintiff's § 1983 Claim Against Defendant Adlerberg is Barred by Absolute Immunity

Adlerberg is protected from suit under § 1983 by absolute judicial immunity. Judges

"generally have absolute immunity from suits for money damages for their judicial actions."

*Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10

(1991) and *Forrester v. White*, 484 U.S. 219, 225–26 (1988)). Judges are afforded absolute

immunity "in order to insure that a judicial officer, in exercising the authority vested in him,

shall be free to act upon his own convictions, without apprehension of personal consequences to

himself." *Id.* (internal quotation marks omitted) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.)

335, 347 (1871)). A judge is immune "even if [the judge's] exercise of authority is flawed by the

commission of grave procedural errors," *Basile v. Connolly*, No. 12 Civ. 227, 2013 WL 869946,

at *1 (2d Cir. Mar. 11, 2013) (summary order) (alteration in original) (quoting *Stump v.

Sparkman*, 435 U.S. 349, 359 (1978)), or if the "judge acted 'in excess of his or her jurisdiction'

or authority," *id.* (quoting *Maestri v. Jutkofsky*, 860 F.2d 50, 52 (2d Cir. 1988)). *See also Collins

v. Miller*, No. 06 Civ. 5179, 2007 WL 2891414, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]bsolute

judicial immunity 'is not overcome by allegations of bad faith or malice,' nor can a judge 'be

deprived of immunity because the action he took was in error . . . or was in excess of his

authority.'" (quoting *Mireles*, 502 U.S. at 11)), *aff'd*, 338 F. App'x 34 (2d Cir. 2009). Judicial

hearing officers are "considered judges for the purposes of this inquiry and are similarly entitled

to absolute immunity." *Collins*, 2007 WL 2891414, at *2 n.3 (citing *Mahapatra v. Comstrock*,

No. 97 Civ. 7129, 1998 WL 88054, at *1 (2d Cir. 1998)); *Mahapatra*, 1998 WL 88054, at *1

("Absolute immunity extends to others who perform functions closely associated with the

judicial process, including hearing examiners and administrative law judges."). Since all of

Plaintiff's claims against Adlerberg involve alleged acts committed by Adlerberg in his judicial

capacity, Plaintiff's claims against Adlerberg are dismissed.

### iii. Plaintiff Fails to State a Claim Against the Individual Defendants

To state a claim under § 1983, a plaintiff must demonstrate that (1) the defendants acted

under "color of state law" and (2) their conduct deprived the plaintiff of a right, privilege or

immunity guaranteed by the Constitution or laws of the United States. *Cornejo v. Bell*, 592 F.3d

121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also*

*Franks v. Laquila Group Inc.*, No. 13 Civ. 980, 2013 WL 790544, at *1 (E.D.N.Y. Mar. 4,

2013). Furthermore, a plaintiff must allege the defendant's direct or personal involvement in the

alleged constitutional deprivation. *See Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir.

2009) ("It is well settled in this Circuit that personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." (quoting

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995))).

Plaintiff has failed to state a claim against Defendants Imperatrice and Pfau in their

individual capacities pursuant to § 1983. Plaintiff did not sufficiently allege that Imperatrice and

Pfau personally violated his constitutional rights. In his opposition to Defendants' motion,

14

Plaintiff alleged, *inter alia*, that Imperatrice initiated the allegedly false investigation, manufactured false evidence against him, and prevented him from receiving promotions. (Pl. Opp'n Mem 6, 9.) According to Plaintiff, Imperatrice "is the one that controls everything as far as the court personnel go." (Oral Arg. Tr. 35:15–18.) Plaintiff also maintains that Pfau played a role in the conditions of employment of the six witnesses who acted against him and had a "vested interest" in Adlerberg's decision against him.[11] (Pl. Opp'n Mem. 3, 9–10.) The Court will permit Plaintiff to amend his Complaint with regard to his § 1983 claims against Imperatrice and Pfau.[12] In his Amended Complaint, Plaintiff must specify the facts he alleges show that Imperatrice and Pfau acted to deprive him of his constitutional rights.

---

[11] Pfau is also a judicial officer. To the extent that Plaintiff brings a claim for Pfau's actions in her judicial capacity, these claims are barred by absolute immunity. *See* Part II(b)(ii). Plaintiff appears to challenge Pfau's actions in her supervisory capacity, which would also be barred because Pfau would lack sufficient personal involvement. *See Iqbal*, 556 U.S. at 677 (holding that, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"); *see also Warrender v. United States*, No. 09 Civ. 2697, 2011 WL 703927, at *5 (E.D.N.Y. Feb. 17, 2011) (noting that, in *Iqbal*, "the Supreme Court explicitly rejected the argument that 'a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.'" (quoting *Iqbal*, 556 U.S. at 677)).

[12] Imperatrice and Pfau argue that they are entitled to qualified immunity. Generally, public officials are entitled to qualified immunity if (1) "their conduct does not violate clearly established constitutional rights of which a reasonable person would have known," or (2) "it was objectively reasonable" for them to believe their acts did not violate those rights. *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 77 (2d Cir. 2010) (quoting *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)); *see generally Bailey v. Pataki*, 708 F.3d 391, 404 n.8 (2d Cir. 2013) (discussing the qualified immunity standard). Objective reasonableness is established if "officers of reasonable competence could disagree on the legality of the action at its particular factual context." *Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007)). Since the Court is granting Plaintiff leave to amend his Complaint to set forth the facts he alleges show that Imperatrice and Pfau acted to deprive him of his constitutional rights, an analysis of the reasonableness of their actions is more appropriately addressed once Plaintiff has amended his Complaint with regard to his § 1983 claims against Imperatrice and Pfau.

### d. Plaintiff's Title VII Claims

Plaintiff claims that Defendants discriminated against him on the basis of his race, retaliated against him for complaining of racial discrimination, and subjected him to a hostile work environment. (Pl. Opp'n Mem. 10–21.) Defendants move to dismiss Plaintiff's Title VII claims on the grounds that there is no individual liability under Title VII, the claims are barred by the statute of limitations, and Plaintiff has failed to plausibly allege that he was discriminated against, retaliated against, or subjected to a hostile work environment. (Defs. Mem. 6–12.) As discussed below, Plaintiff's claims against the Individual Defendants must be dismissed because Title VII does not provide for individual liability. Plaintiff currently fails to demonstrate that his claims are timely. Assuming Plaintiff can demonstrate that his claims are timely, Plaintiff has sufficiently pled a claim for discrimination but fails to state claims for retaliation and hostile work environment. Plaintiff will be permitted to re-plead his Title VII claims against OCA to establish that his claims are timely and to demonstrate that he can plausibly state claims for retaliation and a hostile work environment.

### i. No Individual Liability Under Title VII

Plaintiff's Title VII claims against the Individual Defendants cannot survive Defendants' motion to dismiss because "individuals are not subject to liability under Title VII."[13] *Sassaman*

---

[13] Plaintiff argues that the Individual Defendants may be sued for violating Title VII under the theories of agent liability and "cat's paw" liability. (Pl. Opp'n Mem. 8–9.) Agent liability in the context of Title VII has been explicitly rejected by the Second Circuit. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–16 (2d Cir. 1995) ("A finding of agent liability . . . would lead to results that Congress could not have contemplated."), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *see also Milano v. Barnhart*, No. 05 Civ. 6527, 2007 WL 2042954, at *2 (S.D.N.Y. July 12, 2007) (citing *Tomka*); *Torres v. U.S. Dept. of Veteran Affairs*, No. 02 Civ. 9601, 2004 WL 691237, at *2 (S.D.N.Y. Mar. 31, 2004) (citing *Tomka*). Under "cat's paw" liability theory, "a final decisionmaker that relies entirely on an improperly motivated recommendation from a subordinate may render the [employer] liable because the subordinate, although not formally delegated the power to make decisions, acts as

*v. Gamache*, 566 F.3d 307, 315–16 (2d Cir. 2009) (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)); *see Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) ("Title VII does not impose liability on individuals."); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (holding that plaintiff's Title VII claims against individual defendants were "properly dismissed . . . because individuals are not subject to liability under Title VII" (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995))); *see also Mandell v. County of Suffolk,* 316 F.3d 368, 377 (2d Cir. 2003) (affirming dismissal of Title VII claims "because under Title VII individual supervisors are not subject to liability").

Furthermore, to the extent that Plaintiff asserts Title VII claims against the Individual Defendants in their official capacities, these claims must also be dismissed because they are, in effect, duplicative of the claim against OCA. *See Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 410–11 (E.D.N.Y. 2010) (citing cases) (noting that many courts in this circuit have rejected Title VII claims against individuals sued in their official capacity, and holding that, even if official capacity claims are permissible, official capacity suits must be dismissed if redundant in light of claims against the public entity employer); *see also Anand v. N.Y. Dept. of Taxation & Fin.*, No. 10 Civ. 5142, 2012 WL 2357720, at *7 (E.D.N.Y. June 18, 2012) ("[T]he remaining Title VII claims against the individual defendants in their official capacities are dismissed because they are duplicative of the Title VII claims asserted against the [employer] directly."); *Yu v. N.Y.C. Hous. Dev. Corp.*, No. 07 Civ. 5541, 2011 WL 2183181, at *1 n.1 (S.D.N.Y. June 3,

the [employer's] agent." *Nagle v. Marron*, 663 F.3d 100, 117 (2d Cir. 2011) (citing *Staub v. Proctor Hosp.*, --- U.S.---, 131 S.Ct. 1186, 1190 n.1 (2011)). The "cat's paw" liability theory holds an *employer* liable even though the formal decisionmaker is not the person who harbored an unlawful motive to, for example, terminate the employee. *Id.* It does not apply to individuals. Thus, the Individual Defendants are not liable under either theory. As discussed above, "individuals are not subject to liability under Title VII." *Sassaman v. Gamache*, 566 F.3d 307, 315–16 (2d Cir. 2009) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).

17

2011) (stating plaintiff's Title VII claims against the individual defendant should be dismissed as duplicative of his claims against the employer), *aff'd*, 494 F. App'x 122 (2d Cir. 2012). The Court grants Defendants' motion to dismiss Plaintiff's Title VII claims against the Individual Defendants.

## ii. Statute of Limitations

Defendants argue that most, if not all, of Plaintiff's Title VII claims are time-barred because they relate to events that occurred more than 300 days before Plaintiff filed his EEOC complaint in March 2010. (Defs. Mem. 6–7.) Before bringing a federal claim under Title VII, a plaintiff must first file a complaint with the EEOC or equivalent state agency. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5); *Hammond v. Zurich Am. Ins. Co.*, No, 09 Civ. 3219, 2010 WL 3236777, at *4 (E.D.N.Y. Aug. 12, 2010) (same); *see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) ("Title VII's administrative exhaustion provision requires that any complaint be filed with the EEOC within 300 days of the alleged discriminatory act."). The three hundred day period serves as a statute of limitations, and claims regarding acts that occurred more than three hundred days prior to the employee's filing a charge of discrimination with the EEOC are thus time-barred. *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125–126 (2d Cir. 2010); *Klein v. N.Y. Univ.*, No. 07 Civ. 0160, 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)).

Plaintiff filed his EEOC complaint on March 19, 2010, and, therefore, all of his Title VII claims relating to events that took place before May 23, 2009, including the administrative hearing and the Stipulation of Settlement, are time-barred. (Defs. Mem. 6.) Plaintiff argues,

however, that his Title VII claims should not be time-barred because he is entitled to the benefits of the "continuous violation" exception and equitable tolling. (Pl. Opp'n Mem. 3–7, 18.)

### 1. Continuing Violation Exception

Under the continuing violation exception to the Title VII limitations period, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (internal quotation marks and citations omitted); *Jackson v. N.Y. Office of Mental Health*, No 11 Civ. 7832, 2012 WL 5862741, at *2 (S.D.N.Y. Nov. 15, 2012) ("The continuing violation exception makes violations that took place prior to the expiration of the statute of limitations actionable if they are part of a 'continuous policy and practice of discrimination' and at least one act in that policy and practice took place within the limitations period." (quoting *Fitzgerald*, 251 F.3d at 359)). However, the continuing violations doctrine does not apply to discrete acts of discrimination, even if they are "related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Chin*, 685 F.3d at 155–56 (discussing *Morgan*). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. In contrast, the doctrine can apply to a hostile work environment claim, because a hostile work environment's "very nature involves repeated conduct." *Id.* at 115.

Discrete acts of discrimination include termination, failure to promote, denial of transfer, or refusal to hire. *Morgan*, 536 U.S. at 114. Such discrete acts, "which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin*, 685 F.3d

at 157. An allegation of "an ongoing discriminatory policy does not extend the statute of limitations where the individual effects of the policy that give rise to the claim are merely discrete acts." *Id.*

Plaintiff argues that the actions Defendants took against him prior to May 23, 2009 were part of a discriminatory policy or practice of discriminating against Hispanic court security officers. (Pl. Opp'n Mem. 6–8.) Plaintiff alleges that Hispanic officers were routinely denied promotions, subjected to disparate discipline, and denied transfer opportunities. (Pl. Opp'n Mem. 8.) These are all discrete acts of discrimination and each incident "constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114 (listing failure to promote and denial of transfer as discrete acts of termination); *see Daniels v. Niagara Mohawk Power Corp.*, No. 04 Civ. 0734, 2007 WL 925759, at *4 (W.D.N.Y. Mar. 26, 2007) (holding that incidents such as discriminatory transfer, suspension, discipline, promotion, and compensation are "discrete acts of discrimination as opposed to a continuing violation and are actionable only to the extent that each occurred within the 300-day time period"). Each incident is only actionable if it occurred within the 300-day time period. *Morgan*, 536 U.S. at 114; *Daniels*, 2007 WL 925759, at *4. Even if a discrete incident was "undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period" it is subject to the 300-day bar. *Chin*, 685 F.3d at 157. Therefore, the continuing violation exception does not apply to Plaintiff's Title VII claims for discrimination and retaliation.

### 2. Equitable Tolling

Alternatively, Plaintiff argues that his pre-May 23, 2009 Title VII claims should be equitably tolled. "Title VII's time limits for filing with the EEOC are not jurisdictional, but, like statutes of limitations, are subject to 'waiver, estoppel, and equitable tolling.'" *Baroor v. N.Y.C.*

20

*Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010); *see also Cummings v. Brookhaven Sci. Assocs., LLC*, No. 11 Civ. 1299, 2011 WL 6371753, at *7 (E.D.N.Y. Dec. 20, 2011) ("The filing of 'a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982))). The doctrine of equitable tolling "may be applied to prevent unusually harsh results from dismissals when there are excusable reasons for a plaintiff's failure to meet the required time limitation." *Como v. O'Neill*, No. 02 Civ. 0985, 2002 WL 31729509, at *4 (S.D.N.Y. Dec. 4, 2002).

"As a general matter, a litigant seeking equitable tolling must establish two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (quoting *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)). Equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Baroor*, 362 F. App'x at 159 (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)); *Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007) ("Equitable tolling applies only in the rare and exceptional circumstance." (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000))); *see also Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (holding that equitable tolling was not available where plaintiff alleged she suffered from paranoia, panic attacks and depression, but did not provide "a particularized description of her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights"); *South. v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (stating that a failure by a plaintiff, or her attorney, to act diligently "is insufficient to

21

justify application of an equitable toll"). *Pro se* filings, although held to more lenient standards, are not excused from establishing these elements. *See, e.g., Valverde v. Stinson*, 224 F.3d 129, 133–34 (2d Cir. 2000) (discussing whether *pro se* petitioner's allegations were sufficient to establish potential basis for equitable tolling based on general equitable tolling principles). Plaintiff asserts two grounds for equitable tolling in this case: (1) mental incapacitation and (2) concealment. [14]

### a. Mental Incapacity

Plaintiff claims that he suffers from a variety of mental health issues and argues that he is entitled to equitable tolling due to mental incapacity. (Pl. Opp'n Mem. 3–5.) Plaintiff states that he was an alcoholic in the early eighties and he became sober but he relapsed in May 2010. (*Id.* at 3.) Plaintiff also states that he suffers from "depression, anxiety, and sleep problems," related to litigating his past two legal claims of discrimination at OCA. (*Id.* at 4.) After Adlerberg recommended that Plaintiff be terminated, Plaintiff claims that he was suicidal and "came very close to being hospitalized." (Pl. Opp'n Mem. 4.) Plaintiff also claims his "memory was impaired," he was "in constant distress," "not functioning well," and "slept up to 14 hours at a time." (*Id.* at 4–5.) Plaintiff is currently being treated by a psychiatrist and takes three different

---

[14] Plaintiff also argues that he did not file a timely EEOC complaint regarding events that occurred prior to May 23, 2009 because he feared further retaliation by Defendants. (Pl. Opp'n Mem. 7.) Fear of retaliation is not a basis for equitable tolling. *Pratt v. Stop & Shop Supermarket Co., LLC.*, No. 09 Civ. 5417, 2011 WL 579152, at *4 (E.D.N.Y. Feb. 9, 2011) ("The Court's own research has not revealed a single case where a court equitably tolled the ninety-day period for filing a federal lawsuit because the plaintiff claimed to fear retaliation."); *see also Carter v. W. Publ'g Co.*, 225 F.3d 1258, 1266 (11th Cir. 2000) ("Plaintiffs' purported fear of retaliation, however, is not a ground for equitable tolling. Otherwise, the doctrine of equitable tolling would effectively vitiate the statutory time requirement because an employee could defer filing indefinitely so long as she had an apprehension about possible retaliation." (citations omitted)).

medications for "severe depression, attention deficit disorder, post-traumatic stress disorder, and insomnia." (*Id.*)

Defendants argue that Plaintiff fails to allege that his mental health issues affected his ability to pursue his legal rights. (Defs. Reply Mem. 3.) They assert that while Plaintiff claims to be a recovering alcoholic, Plaintiff also claims that he was sober during the period at issue and did not relapse until May 2010. (*Id.* at 3.) Also, Plaintiff has not specified the exact timing of his various ailments "much less that it occurred during the time period he is seeking equitable tolling." (*Id.* at 4.) Defendants also note that Plaintiff functioned normally during the period from January 7, 2008 to May 22, 2009. (*Id.*) In January 2008, Plaintiff filed complaints with OCA and the DA's office regarding his co-worker's gambling operation. (*Id.*) He filed a claim for worker's compensation benefits in March 2008. (*Id.*) He applied for social security disability benefits in June 2008. (*Id.*) He retained counsel and participated in his own defense during the administrative proceeding in January and February 2009. (*Id.*) Defendants argue that Plaintiff did not engage in reasonable diligence in pursuing his EEOC complaint. (*Id.* at 4–5.) They further argue that Plaintiff cannot plausibly purport to have faced extraordinary circumstances due to his mental health issues, given the administrative and legal actions that he took during the time period. (*Id.*)

"[T]he question of whether a person is sufficiently mentally disabled to justify tolling of a limitation period is, under the law of this Circuit, highly case-specific." *Boos*, 201 F.3d at 184 (holding plaintiff was not entitled to equitable tolling where her mental incapacity claim amounted to no more than a mere statement that she suffered from "paranoia, panic attacks, and depression"). Equitable tolling is a fact-specific issue that is best analyzed in the context of summary judgment. *Mandarino v. Mandarino*, 180 F. App'x 258, 261 (2d Cir. 2006); *see also*

*Stella v. Potter*, 297 F. App'x 43, 45–46 (2d Cir. 2008) (reversing dismissal pursuant to Rule 12(c) because the district court should have accepted plaintiff's allegation that he was unable to comply with subsequent time limits because of mental illness).

Plaintiff is "entitled to an opportunity to adduce evidence supporting his equitable tolling claim — specifically, evidence demonstrating how he could have been mentally incapable of timely pursuing this action at the same time that he was able to pursue other lawsuits." *Mandarino*, 180 F. App'x at 261; *see also Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60–61 (2d Cir. 2002) (vacating district court's dismissal, finding "an evidentiary hearing" necessary in order "to determine to what extent, if any, [plaintiff]'s condition did in fact inhibit his understanding or otherwise impair his ability to comply, such that equitable tolling would be in order"). In order to secure the benefits of equitable tolling, Plaintiff must present evidence that supports more than a "conculsory and vague claim" of mental incapacity. *Boos*, 201 F.3d at 185. The evidence must provide a "particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights." *Id.; see also Como*, 2002 WL 31729509, at *4 (holding, on summary judgment, that equitable tolling did not apply where a plaintiff's purported reason for filing an untimely Title VII claim was "that he was going through a difficult time with his girlfriend and had trouble collecting his papers in order to file on time"). The Court will permit Plaintiff to amend his Complaint to set forth, in greater detail, how his mental health issues impaired his ability to timely file his Title VII claim.

### b. Concealment

Plaintiff also argues that "OCA concealed and misrepresented facts that would have supported a charge of discrimination, retaliation, harassment, and hostile work environment," leading to his inability to timely file his Complaint. (Pl. Opp'n Mem. 5.) Plaintiff alleges that

from January 2008 to May 2008,[15] he did not know he was under investigation, and that the DA's office and Imperatrice concealed information that would have alerted him to the fact that the proceedings against him violated Title VII. (*Id.* at 5–6) For example, Plaintiff alleges that the DA's office and Imperatrice concealed the fact that (1) Defendants did not conduct any investigation into the allegations made against Officer Brennan, and (2) Officer Brennan has friends in common with Imperatrice. (*Id.*) Plaintiff also maintains that exculpatory evidence was deliberately withheld while purportedly incriminating evidence was fabricated. (*Id.*) Plaintiff does not state when he learned these facts or explicitly describe how they revealed the unlawful nature of the administrative proceedings.

"[E]quitable tolling prevents the running of a statute of limitations against a plaintiff who is unaware that he has a cause of action *because of* defendant's fraudulent acts or concealment." *Bennett v. U.S. Lines, Inc.*, 64 F.3d 62, 66 (2d Cir. 1995) (emphasis added). "The doctrine may be applied in cases where the defendant is shown to have 'engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action.'" *Id.* (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48–49 (2d Cir. 1985)); *see also Clarke v. Roslyn Union Sch. Dist.*, No. 11 Civ. 2957, 2012 WL 2916759, at *3 (E.D.N.Y. Jul. 17, 2012) ("[C]ourts have excused the failure to timely file an employment discrimination complaint in court where a plaintiff has received inadequate notice of his or her obligations or has been misled by affirmative misconduct of the defendant."). "Put simply, equitable tolling may be available when the plaintiff's failure to meet a deadline is someone else's fault." *Dillard v.*

---

[15] Plaintiff does not clearly state when he discovered that he was under investigation. (*See* Pl. Opp'n Mem. 5–6 (stating that Defendants concealed the fact that Plaintiff was the target of an investigation starting January 7, 2008).) For purposes of this motion, the Court assumes that Plaintiff discovered that he was under investigation when he was served with charges of filing false incident reports on May 22, 2008. (Pl. Opp'n Mem. 2.)

*Runyon*, 928 F. Supp. 1316, 1325 (S.D.N.Y. 1996). To avoid dismissal on the grounds of equitable tolling due to Defendants' misconduct, Plaintiff must set forth in his Amended Complaint facts from which the Court could conclude that he was unaware of his cause of action *because of* Defendants misleading conduct. *See Krish v. Conn. Ear, Nose & Throat, Sinus & Allergy Specialists, P.C.*, 607 F. Supp. 2d 324, 328 (D. Conn. 2009) (holding that more specific allegations would be necessary to make out a plausible claim for equitable tolling where plaintiff had not explained how employer's alleged actions "actively misled" plaintiff or "prevented [plaintiff] in some extraordinary way from exercising her rights").

### iii. Sufficiency of Pleading

Defendants argue that Plaintiff's Title VII claims for discrimination, hostile work environment, and retaliation must be dismissed because they are not sufficiently pled. (Defs. Mem. 8–12.) Claims for discrimination and retaliation are analyzed under the *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see, e.g. Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (discrimination); *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (retaliation). However, the main question on a motion to dismiss is whether Plaintiff can establish a claim that has "[f]actual allegations [that] raise a right of relief above the speculative level." *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555); *see also Williams*, 458 F.3d at 71 ("[T]he requirements for establishing a prima facie case under *McDonnell Douglas* [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002))); *AB ex rel. CD v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 154 (S.D.N.Y. 2004) ("The question that should be considered by this Court in connection with the [motion to dismiss] is whether

[plaintiff] has alleged a prima facie case for retaliation; not whether her claim will survive a *McDonnell Douglas* burden shifting analysis."). Similarly, Plaintiff is not required to establish a prima facie case of his hostile work environment claim; instead, he must plead facts sufficient to support the conclusion that he was faced with harassment such that "a reasonable employee would find the conditions of her employment altered for the worse." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).

"The elements of a *prima facie* case do, however, 'provide an outline of what is necessary to render [a plaintiff's employment discrimination] claims for relief plausible.' Courts therefore 'consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests.'" *Pahuja v. Am. Univ. of Antigua*, No. 11 Civ. 4607, 2012 WL 6592116, at *9 (S.D.N.Y. Dec. 18, 2012) (internal citations and quotation marks omitted). Civil rights complaints alleging racial animus are sufficiently pled where they simply state that plaintiff is a member of a particular racial group and was singled out for maltreatment for that reason. *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 309 (E.D.N.Y. 2012) (quoting *DiPetto v. U.S. Postal Serv.*, 383 F. App'x 102, 103 (2d Cir. 2010)). Assuming Plaintiff can demonstrate that his claims are timely, Plaintiff has sufficiently pled a claim for discrimination, but has failed to sufficiently plead claims for retaliation and hostile work environment. Plaintiff will be permitted to re-plead his retaliation and hostile work environment claims.

### 1. Discrimination

Plaintiff claims that OCA discriminated against him on the basis of his race by charging him with disciplinary violations, forcing him to sign the Stipulation of Settlement, refusing to issue him a firearm when he returned to work following an injury, and refusing to accommodate

27

his disability.[16] (Compl. App. 1–2; Pl. Opp'n Mem. 10–14.) To establish a prima facie case of discrimination under Title VII, a plaintiff must allege that, (1) he belongs to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown*, 673 F.3d at 150; *see also Ruiz*, 609 F.3d at 491–92 (outlining the elements of a prima facie case).

Defendants argue that Plaintiff has not met his burden to plead sufficient facts to support his discrimination claim. (Defs. Mem. 8–10.) Plaintiff, a Hispanic of Puerto Rican descent, is a member of a protected group. (Compl. App. 1.) *See, e.g., Aguirre v. N.Y. Police*, 156 F. Supp. 2d 305, 318 (S.D.N.Y. 2001) ("Plaintiffs, as Hispanics, are members of a protected group . . . ."). Defendants do not contest that Plaintiff was qualified for his position and subjected to adverse employment actions. (*See* Defs. Mem. 6–12.) Therefore, for the purposes of this motion, the Court finds that Plaintiff has sufficiently pled the first, second, and third prongs of the test. *See Williams v. County of Nassau*, 684 F. Supp. 2d 268, 293 (E.D.N.Y. 2010) (finding plaintiff sufficiently pled first three prongs where the plaintiff is a member of a protected group and second and third prongs are not disputed), *on reconsideration in part*, 779 F. Supp. 2d 276 (E.D.N.Y. 2011).

Plaintiff has also satisfied the causation prong. Plaintiff has alleged specific circumstances in which twelve different non-Hispanic court security officers were subject to

---

[16] Plaintiff claims that, among other things, OCA filed disciplinary charges against him in May 2008 and that forced him to sign the Stipulation of Settlement in May 2009 because of his race. (Compl. App. 1–2; Compl. Ex. 2.) Defendants argue that these allegations are time-barred and therefore cannot serve as the basis of a Title VII claim. (Defs. Mem. 7.) As discussed in Part II(d)(ii)(2), Plaintiff is given an opportunity to amend his Complaint in order to explain why these claims should be equitably tolled. Plaintiff's claims that he was refused the issuance of a firearm when he returned to work and that he was forced to stand while on duty despite his alleged injury are timely.

more favorable treatment. *See Mandell*, 316 F.3d at 379 ("A showing of disparate treatment —
that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated
employee outside his protected group' — is a recognized method of raising an inference of
discrimination for purposes of making out a *prima facie* case." (quoting *Graham v. Long Island
R.R.*, 230 F.3d 34, 39 (2d Cir. 2000))). Defendants argue that these security officers were not
similarly situated in all material respects to the non-Hispanic officers Plaintiff describes in his
Complaint.[17] (Defs. Mem. 9–10.) "The question of whether someone is similarly situated is
generally not resolved on a motion to dismiss, because the analysis is highly fact specific."
*Bakeer v. Nippon Cargo Airlines, Co.*, No. 09 Civ. 3374, 2011 WL 3625103, at *28 (E.D.N.Y.
Jul. 25, 2011) (internal citations omitted) (citing *Jordan v. Potter*, No. 05 Civ. 3005, 2007 WL
952070, at *4 n.3 (E.D.N.Y. Mar. 29, 2007); *Lee v. HealthFirst, Inc.*, No. 04 Civ. 8787, 2006
WL 177175, at *7 (S.D.N.Y. Jan. 25, 2006)). If, therefore, Plaintiff is able to show that his Title
VII action is timely, he has alleged facts sufficient to survive Defendants' motion to dismiss his
discrimination claim.

## 2. Retaliation

Plaintiff's Title VII retaliation claim is based on his allegation that Defendants took the
alleged actions against him in retaliation for his complaints to the EEOC in 2004 and 2005 and

---

[17] Defendants also contend that Plaintiff's allegations of disparate treatment are
insufficient to state a claim because OCA can articulate non-discriminatory reasons for the
actions taken against him. Although Plaintiff bears the burden of eventually proving that
Defendants' proffered reasons are prextext under the *McDonnell Douglas* analysis, as discussed
above, the Second Circuit has explicitly recognized that the *McDonnell Douglas* analysis is
inappropriate in the context of a motion to dismiss. *Patane v. Clark*, 508 F.3d 106, 112 n.3 (2d
Cir. 2007) (citing *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 343 (2d Cir. 2006)
(*McDonnell Douglas* standard inappropriate in 12(b)(6) context)).

his subsequent filing of federal actions.[18] (Pl. Opp'n Mem. 18–19.) To establish a Title VII retaliation claim, plaintiff must allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

Plaintiff has alleged that he filed two separate EEOC charges in 2004 and 2005, and two corresponding federal actions, alleging anti-Hispanic discrimination at OCA and that Defendants retaliated against him.[19] (Pl. Opp'n Mem. 12, 18–19.) Plaintiff's EEOC complaints and subsequent federal actions were protected activity. *See Deravin v. Kerik*, 335 F.3d 195, 203 n.6 (2d Cir. 2003) (protected activity under Title VII includes opposition to unlawful discrimination). Plaintiff claims that Imperatrice and Pfau were the defendants in his 2004 and 2005 complaints and were therefore aware of this protected activity. (Pl. Opp'n Mem. 20.) Plaintiff maintains that, as a result of his protected activity, disciplinary charges were filed against him in May 2008 and he was subjected to an unfair hearing in early 2009. (Compl. App. 1.) In response to Defendants' motion to dismiss, Plaintiff also states that he received his first

---

[18] Plaintiff also states that he complained to "Major Long, the commanding officer" about "the absence of Hispanics in assignments that lead to promotion." (Pl. Opp'n Mem. 20.) However, Plaintiff does not state when he made that complaint, whether Defendants were aware of the complaint, or whether there is evidence to suggest a causal connection between this complaint and subsequent adverse employment actions.

[19] Defendants argue that Plaintiff's Title VII retaliation claim must be dismissed because complaining about a gambling operation is not a protected activity. (Defs. Mem 12.) However, Plaintiff's retaliation claim is based on his EEOC complaints and federal actions regarding anti-Hispanic discrimination within the OCA in 2004 and 2005, not the complaints about gambling made in January 2007. (Pl. Opp'n Mem. 18.) The EEOC complaints and federal actions are clearly protected activity. *See Deravin v. Kerik*, 335 F.3d 195, 203 n.6 (2d Cir. 2003) (protected activity under Title VII includes opposition to unlawful discrimination).

negative evaluation, was denied a monetary supplement, received threats and reprimands, and was subjected to a hostile work environment as a result of his 2004 and 2005 EEOC complaints, although he does not specify when. (Pl. Opp'n Mem. 18–20.) Since Plaintiff has alleged that he engaged in protected activity, that Defendants knew of his protected activity, and that he was subjected to adverse employment actions, Plaintiff has alleged the first three prongs of his retaliation claim. *See, eg., Travessi v. Saks Fifth Ave. Inc.*, No. 00 Civ. 8970, 2005 WL 1981705, at *4 (S.D.N.Y. Aug. 15, 2005) (finding that plaintiff alleged the first three prongs of her Title VII retaliation claim because she alleged that she filed complaints against defendant, that defendant knew of the complaints, and that defendant took adverse employment actions against her). However, Defendants assert that Plaintiff cannot establish the required causal connection between his 2004 and 2005 EEOC complaints and Defendants' alleged retaliation. (Defs. Reply Mem. 6.)

In order to establish a Title VII retaliation claim, proof of causation can be shown either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 628–29 (E.D.N.Y. 2012) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Standing alone, the approximately three years between Plaintiff's 2004 and 2005 EEOC complaints, and subsequent federal actions, and Defendants' alleged retaliation in 2008 do not support an inference of retaliation because they lack temporal proximity. The Second Circuit has not specified how close in time a complaint and retaliatory act must be to infer causation, but it

has held that a retaliatory action 15 months after the filing of an EEOC complaint is "too temporally removed to support the inference" of causation. *Woodworth v. Shinseki*, 447 F. App'x 255, 258 (2d Cir. 2011); *see also Richardson v. N.Y. Dep't of Corr. Serv.*, 180 F.3d 426, 447 (2d Cir. 1999) (two year gap between complaint and discharge insufficient to prove causation), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Given the three year gap between Plaintiff's last EEOC complaint, and subsequent federal action, and the alleged retaliatory actions, Plaintiff cannot rely on temporal proximity to establish the required causality to sustain his retaliation claim. Plaintiff must, therefore, present direct evidence of causation or this claim will fail. The Court will permit Plaintiff to amend his Complaint to add any direct evidence of the actions he alleges were motivated by retaliation for him filing discrimination complaints with the EEOC in 2004 or 2005 and filing corresponding federal actions.

### 3. Hostile Work Environment

Plaintiff has failed to sufficiently plead a hostile work environment claim. "To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive — that is, . . . creates an environment that a reasonable person would find hostile or abusive'; [and] (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive.'" *Patane*, 508 F.3d at 113 (citations omitted). Plaintiff must also plead that the hostile work environment was due to his race or other characteristic protected by Title VII. *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001). "Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions

of her employment altered for the worse,'" and the Second Circuit has "'repeatedly cautioned against setting the bar too high' in this context." *Patane*, 508 F.3d at 113 (emphasis omitted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Plaintiff alleges that Defendants subjected him to a hostile work environment by charging him with unsubstantiated disciplinary infractions, placing him on probation for three years, revoking his authority to carry a firearm, transferring him to the Bronx County Courthouse, demoting him from sergeant to officer, compelling him to withdraw a valid workers compensation claim, coercing him to retire, and refusing to issue him a "good guy" letter upon retirement without which he cannot obtain a New York City pistol permit. (Pl. Opp'n Mem. 17.) Plaintiff does not allege that these actions were taken on account of his race or national origin. (*Id.*) Instead, Plaintiff claims that a hostile work environment was created after, and in response to, his 2004 and 2005 EEOC complaints. (*Id.* (alleging that defendants created a hostile work environment "because of [Plaintiff's] filing of past charges of discrimination").) Therefore it appears that Plaintiff's allegations of a hostile work environment are actually made in support of his retaliation claim, not as a separate cause of action. *See Kear v. Katonah Lewisboro Cent. Sch. Dist.*, No. 05 Civ. 7038, 2007 WL 431883, at * 3 (S.D.N.Y. Feb. 7, 2007) (interpreting allegations of a hostile work environment as arguments in support of other claims but granting leave to amend to assert a separate hostile work environment claim). If Plaintiff intends to assert a separate claim that Defendants created a hostile work environment on account of his race or national origin, Plaintiff is granted leave to amend his Complaint for that purpose.

## III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The Court grants Defendants' motion to dismiss Plaintiff's ADA claims against all

Defendants, § 1983 claims against OCA and Adlerberg, § 1983 claims against Imperatrice and Pfau in their official capacities, and Title VII claims against Imperatrice, Pfau and Adlerberg. The Court denies Defendants' motion to dismiss as to Plaintiff's § 1983 claims against Imperatrice and Pfau in their individual capacities and Title VII claims against OCA. Plaintiff is granted leave to amend the Complaint. The amended complaint must be filed within 30 days of the date of this Memorandum and Order. Plaintiff is advised that any amended complaint he files will completely replace the original Complaint. The amended complaint must be captioned, "Amended Complaint" and shall bear the same docket number as this Order.

SO ORDERED.

MARGO K. BRODIE
United States District Judge

Dated: March 27, 2013
Brooklyn, New York

34